UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 3:02cr72(AWT) |
| | : | |
| v. | : | |
| | : | |
| **JERKENO WALLACE** | : | August 3, 2006 |

### GOVERNMENT'S REPLY TO THE DEFENDANT'S *CROSBY* BRIEF

On July 19, 2006, the defendant Jerkeno Wallace filed a brief requesting that the court impose a new sentence in light of the holding of the United States Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005). The Government believes that the factors cited by the defendant do not support the imposition of a nontrivially different sentence and requests that the Court affirm the original sentence imposed in this case.

### I. Procedural History

On May 13, 2003, a jury returned a verdict convicting the defendant on Counts One, Five, Eleven, Twelve, Thirteen and Fourteen, which charged violations of 21 U.S.C. § 846 (drug trafficking conspiracy); 21 U.S.C. § 841 (distribution of crack cocaine); 18 U.S.C. § 924(o) (conspiracy to use firearm during drug trafficking offense/crime of violence); 18 U.S.C. §§ 36(b)(2)(A), 1111(a), and 2 (drive by shooting/first degree murder); 18 U.S.C. §§ 924(j)(1) and (c)(1)(A)(iii) (carrying and using a firearm during and in relation to drug trafficking

offense and/or crime of violence).[1]

On December 12, 2003, the Court sentenced the defendant to life imprisonment; judgment formally entered on December 15, 2003. The defendant filed a timely notice of appeal. On April 27, 2006, the United States Court of Appeals for the Second Circuit ordered a limited remand in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

On June 9, 2006, the Court ordered the parties to submit briefs on this issue. The defendant filed his brief or about July 19, 2006.

## II.  Limited Remands in Light of *Booker* and *Crosby*

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the

---

[1] The parties have been invited to opine whether Count Thirteen or Count Fourteen should be dismissed pursuant to the Second Circuit's ruling. The Government suggests that because the firearm clearly was used to murder Gil Torres, as charged in Count Fourteen, the Court should vacate the defendants' convictions on Count Thirteen, which concerns the use of the firearm in connection with drug trafficking. While the firearm was held "at the ready" in the event the defendants needed to protect their drug turf, such carriage and usage is not as direct at the carriage and usage proven in Count Fourteen.

statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 756. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id.* at 769.

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). *Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range,* or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. *Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.* Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby*, 397 F.3d at 113 (emphasis added). When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to

3

discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." *Id.*

### III. Discussion

The Government agrees that the Court should consider all of the factors cited by the defendant, but believes that such consideration should not result in the imposition of a different sentence.

The defendant argues that consideration of the nature and circumstances of the offense, his history and characteristics, the "atypical [aspects of this] homicide", and the fact that he may not have been the shooter should lead "this Court [to] find that had the guidelines been merely advisory, it would probably have sentenced Mr. Wallace to a materially different sentence." Def's Memo at 8. These arguments were largely advanced previously as grounds for a downward departure pursuant to U.S.S.G. §§ 5H1.3 and 5K2.10. At the defendant's sentencing hearing, the Court acknowledged that it had the discretion to depart, but for very specific and compelling reasons, the Court elected not to depart from the Guidelines' range of life imprisonment.

The Court's comments at the defendant's sentencing

demonstrate that even if the Guidelines were advisory and not compulsory in December 2003, the Court would have sentenced Mr. Wallace to life imprisonment or a sentence that is not nontrivially different from life.  The Court explained that in determining an appropriate sentence for the murder of Gil Torres, it had considered the "factors . . . set forth at Title 18 U.S.C. § 3553."  *See* Transcript 12/12/03 ("Tr. at 89").  After specifying the six enumerated criteria, the Court explained to the defendant that it had taken into account each of these factors in determining an appropriate sentence.  In this regard, the Court stated,

> First of all, I did receive the Presentence Report which was prepared by the Probation Office.  But perhaps more importantly, I sat through the pretrial proceedings in this case, the trial in this case, and the proceedings involving the other defendants in this case.

Tr. at 90.  In imposing a life sentence, the Court noted that although it had the authority to impose a sentence of less than life, it would "not exercise [its] discretion to depart[.]" Tr. at 91.  Critically, the Court prefaced its comments by noting that in situations where a conviction warrants a lengthy sentence under any scenario, "[s]ometimes you try not to say things that might be hurtful to a defendant and you omit saying them and then your remarks are misunderstood."  The Court emphasized that it would not refuse to depart from a Guidelines range simply because a defendant had insisted on exercising his sacrosanct right to a

5

trial. Tr. at 91-92. But, as the Court noted, neither defendant displayed any remorse for the murder of Gil Torres:

> Defendants and lawyers sometimes forget that the judge gets an extended opportunity to see and size up people during a trial. There are lots of things that go on that are not in the record, but the judge sees what happens. The judge observes the conduct, reactions of defendants and lawyers. And the judge gets an impression of those people. And you have extended proceedings, the judge gets extensive knowledge of those people. So my comment about no remorse and no acceptance of responsibility was not at all tied to the fact that the defendants went to trial, but, rather, based on my observations of the defendants as I've had an extended time period in which to observe them.
>
> * * *
>
> What I didn't say [at the sentencing of Negus Thomas], and I said I wouldn't say it because I thought I was heaping enough hurt on him in sentencing him, but I will say, because I do want the record to be clear, is that, to me, the purposes that have to be served in imposing sentence are very important. And the statutory factors are very important. This is a case where I have looked at the characteristics of the defendants, their offense conduct, the nature of the offense, and I have concluded that in each case the defendant is an individual from whom society needs to be protected. And in that situation it seems to me to never be appropriate to depart downward because if society needs to be protected from someone, they should be incarcerated at the top of the applicable range.
>
> So, for those reasons, even if there is an argument that this defendant meets standards for a downward departure, I choose not to exercise my discretion to depart downward in this case.
>
> And I will note that the other point that I made in articulating the reasons or the factors that were important in the sentence were the need to deter others like this defendant from engaging in like conduct. That, too, suggests a more severe sentence and, to me, means that it would be inappropriate to depart downward.

> And I will note that in this case I used intentionally a different formulation of the general deterrence statement than I usually use. I usually just say general deterrence, but I thought long and hard about the need for these kinds of instances not to occur in our society. The government's described, you know, what happened, the events of that day. It's an entirely accurate description. And we are quite fortunate that only one person was killed and that no innocent people were killed.

Tr. at 92-94.

Accordingly, based on the measured, yet stern comments of the Court, and given that the defendant's arguments have been considered and rejected previously, the Government respectfully submits that there is no basis to conclude that the Court would have imposed a nontrivially different sentence had the Guidelines been advisory in December 2003.

### IV. Conclusion

A life sentence for the first degree murder of Gil Torres was – and remains – an appropriate disposition. The Government respectfully requests that the Court vacate the conviction under Count Thirteen and reaffirm the sentence previously imposed in this case.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

/s/
MICHAEL J. GUSTAFSON
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT01503

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 3rd day of August, 2006, a copy of the foregoing was mailed to:

Richard Cramer, Esq.
Law Offices of Richard Cramer
449 Silas Deane Highway
Wethersfield, CT 06109

                                      _____/s/_____
                                      Michael J. Gustafson
                                      Assistant U.S. Attorney